STATE OF MINNESOTA

IN SUPREME COURT

A24-1205

Workers' Compensation Court of Appeals

Gaïtas, J.
Concurring in part, dissenting in part,
Moore, III, Thissen, JJ.

Lucas Peterson,

Respondent,

vs.

Filed: July 16, 2025
Office of Appellate Courts

City of Minneapolis, Self-Insured,

Relator.

_____

Ashley N. Biermann, Alexa R. Hottle, Meshbesher & Spence, Minneapolis, Minnesota, for respondent.

Jeffrey J. Lindquist, Anthony Gabor, Justine K. Wagner, Gries Lenhardt Allen, P.L.L.P., Saint Michael, Minnesota, for relator.

Paul A. Merwin, Patricia Y. Beety, General Counsel, League of Minnesota Cities, Saint Paul, Minnesota, for amicus curiae League of Minnesota Cities.

Timothy P. Jung, Lind Jensen Sullivan & Peterson, Minneapolis, Minnesota, for amicus curiae Minnesota Counties Intergovernmental Trust.

Joshua W. Laabs, Minnetonka, Minnesota; and

Lindsey M. Rowland, Meuser, Yackley & Rowland, Eden Prairie, Minnesota, for amicus curiae Minnesota Association for Justice.

_____

1

1.     The Workers' Compensation Court of Appeals did not err in affirming the compensation judge's finding that the employee has a compensable mental injury because that finding is not manifestly contrary to the evidence, which included testimony by a licensed professional psychologist that, based on the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, the employee has a present diagnosis of post-traumatic stress disorder (PTSD).

2.     The Workers' Compensation Court of Appeals erred in addressing the employee's argument that he was entitled to compensation benefits for a diagnosis of other specified trauma and stressor-related disorder (OSTD) as a consequential mental injury of PTSD because that issue was moot given the record here, where the employee's expert psychologist opined that the employee's OSTD diagnosis was "subthreshold PTSD" and the Workers' Compensation Court of Appeals decided that the employee is entitled to compensation benefits for a present diagnosis of PTSD.

3.     The Workers' Compensation Court of Appeals did not err in affirming the compensation judge's award of a penalty for frivolous denial of primary liability.

Affirmed in part and reversed in part.

O P I N I O N

GAÏTAS, Justice.

In this case, we are asked to decide whether the Workers' Compensation Court of Appeals (WCCA) erred in affirming the compensation judge's determination that the employee, Lucas Peterson, is entitled to workers' compensation benefits under Minnesota

2

Statutes section 176.66 (2024) for a mental impairment. We are further asked to decide whether the WCCA erred in affirming the compensation judge's award of penalties against the employer, City of Minneapolis. The City argues that the WCCA committed errors of law by (1) affirming the compensation judge's determination that Peterson is entitled to workers' compensation benefits for a present diagnosis of post-traumatic stress disorder (PTSD); (2) sua sponte referring the case back to the compensation judge for a finding regarding Peterson's claim for benefits based on a diagnosis of other specified trauma and stressor-related disorder (OSTD) as a consequential mental injury of PTSD; (3) affirming the compensation judge's determination following the referral that Peterson is entitled to workers' compensation benefits for OSTD as a consequential mental injury of PTSD; and (4) affirming the compensation judge's award of penalties against the City for frivolous denial of liability. We conclude that the WCCA did not err by affirming the compensation judge's determination that Peterson is entitled to workers' compensation benefits for a present diagnosis of PTSD or by affirming the award of penalties, and thus, we affirm its decision in part. But because the WCCA erred when it decided that Peterson is also entitled to workers' compensation benefits for OSTD, even though that issue was moot, we reverse in part.

## FACTS

Respondent Lucas Peterson worked as a police officer for relator City of Minneapolis for 22 years. In 2021, Peterson informed the City that he could no longer

3

serve as a police officer due to PTSD,[1] and he sought workers' compensation benefits. The City denied liability, and Peterson filed a claim petition. Following a hearing, a workers' compensation judge ruled that Peterson was entitled to benefits and awarded penalties against the City for frivolously denying benefits. The WCCA affirmed. In this appeal, the City challenges the decision of the WCCA.

Based on the record before us, the relevant facts are as follows. The City of Minneapolis hired Peterson in 1999 as a community service officer. Before beginning his employment, Peterson underwent a pre-employment mental health exam by a licensed psychologist. The psychologist reported that Peterson "[did] not appear to have any significant personality or emotional problems." After serving as a community service officer for approximately one year, the City hired Peterson to be a patrol officer. He underwent another pre-employment mental health exam. Again, the evaluating psychologist reported that Peterson "[did] not appear to have any significant personality or emotional problems."

In 2003, Peterson joined the Minneapolis Police Department's special weapons and tactics (SWAT) team. He later served as a sergeant and supervisor with the SWAT team.

During Peterson's 22 years with the police department, he experienced numerous traumatic events. Peterson estimated that he responded to 30 to 50 homicide calls—five or six involving the death of a child. He responded to a mass shooting with an active

---

[1]     PTSD is a mental health disorder that can develop after an individual is exposed to traumatic events. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 301–03 (5th ed. 2022) (DSM-5-TR). Symptom presentation and severity vary widely depending on the individual. *See id.*

shooter. And he was present for 10 to 15 officer-involved shootings. According to Peterson, he feared for his life and the lives of others on multiple occasions while performing his job.

In March 2021, Peterson began twice-weekly therapy with a counselor. At the therapist's recommendation, Peterson visited a physician, who diagnosed him with anxiety related to his work. Following that diagnosis, Peterson hired a lawyer to pursue workers' compensation benefits.

A licensed psychologist, Dr. John Cronin, performed an extensive evaluation of Peterson in May and June 2021. In a report dated June 21, 2021, Dr. Cronin diagnosed Peterson with PTSD and recommended that Peterson stop working as a police officer. Peterson notified the City that he was unable to work as of May 2021, due to PTSD, and he sought workers' compensation benefits.

In September 2021, the City denied primary liability for Peterson's PTSD claim, maintaining that Peterson did not meet the criteria for a PTSD diagnosis and that any presumption of compensability did not apply. *See* Minn. Stat. § 176.011, subd. 15(e) (2024)[2] (establishing a presumption—for certain active-duty employees, including police officers—that PTSD is "an occupational disease and shall be presumed to have been due to the nature of employment" so long as the employee "had not been diagnosed with

_____

[2] Throughout this opinion, we apply the statutes in effect on Peterson's date of injury, May 26, 2021, which is the date Peterson stopped working as a police officer. *See Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304, 307 (Minn. 1987) (explaining that workers' compensation cases are governed by "the law in effect on the date of the controlling event," which is the date of "the most recent occurrence of a compensable personal injury"). The parties do not dispute the date of injury.

5

[PTSD] previously"). To rebut any presumption of compensability, the City alleged that Peterson had a history of mental health conditions before his employment. *See id.* (providing that the presumption "may be rebutted by substantial factors brought by the employer or insurer"). The City did not investigate Peterson's claim at that time.

Peterson filed a claim petition with the Office of Administrative Hearings on November 8, 2021, claiming entitlement to workers' compensation benefits as a result of a work-related PTSD diagnosis with a May 26, 2021 date of injury.

The City hired Dr. Kenneth Ray Young, a licensed psychologist, to perform an independent psychological examination of Peterson on March 12, 2022. Dr. Young issued a report concluding that Peterson did not satisfy the criteria for a PTSD diagnosis or any other mental health disorder under the Diagnostic and Statistical Manual of Mental Disorders (5th ed. 2013) (DSM-5).[3]

At the request of Peterson's attorney, another licensed psychologist, Dr. Kasey Aleknavicius, performed an independent psychiatric evaluation of Peterson on May 25, 2022, and issued a written report. Her written report stated that Peterson did not *presently* meet the criteria for a PTSD diagnosis under the DSM-5, "likely due to his participation in treatment during the last year." But Dr. Aleknavicius's report determined that Peterson did

---

[3] The Diagnostic and Statistical Manual of Mental Disorders (DSM) is a handbook used by medical professionals to assist in the diagnosis of patients' mental disorders. *See Smith v. Carver County*, 931 N.W.2d 390, 397 (Minn. 2019).

PTSD is defined by Minnesota statute as "the condition as described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association." Minn. Stat. § 176.011, subd. 15(d) (2020). It is the only mental impairment recognized as an occupational disease for the purposes of Minnesota's workers' compensation law. *See id.*

*previously* meet the full criteria for PTSD under the DSM-5, citing to an assessment dated May 3, 2021, which diagnosed Peterson with PTSD, and Dr. Cronin's June 21, 2021 report. Dr. Aleknavicius concluded that Peterson currently met the DSM-5 criteria for OSTD, which her report characterized as "subthreshold PTSD." Dr. Aleknavicius opined in her report that Peterson's OSTD was a "direct result" of Peterson's "previous PTSD diagnosis." Her report noted that the diagnosis of OSTD "is consistent with repeated exposure to aversive details of trauma, witnessing trauma as it occurred to others, and fearing for his own safety, and that of others, while performing his duties as a police officer for the [Minneapolis Police Department]." Dr. Aleknavicius's report further explained that, although Peterson's consistent mental health treatment helped "reliev[e] the severity/frequency of some symptoms," he was still experiencing "persisting symptoms" that "continue[d] to result in significant distress and impairment in his occupational and social functioning."

Following Dr. Aleknavicius's report, Peterson filed an amended claim petition on November 7, 2022. The amended petition claimed that Peterson was entitled to compensation benefits as a result of the May 26, 2021 PTSD injury. And it alleged a new claim of consequential injury in the nature of OSTD.

### ***Proceedings Before the Compensation Judge***

The compensation judge held a hearing on March 23 and April 27, 2023, to determine Peterson's eligibility for workers' compensation benefits.

Peterson and his wife testified on the first day of the hearing. During Peterson's testimony, he described his work as a Minneapolis police officer, the traumatic incidents

7

he experienced at work, and the onset and exacerbation of his mental health symptoms. He testified that he has improved with therapy, but he still has poor concentration, negative thoughts, loss of empathy, sleep disturbance, anxiety, depression, feelings of isolation, and unregulated anger and emotions. Peterson's wife testified that she has been married to Peterson since 2006. She explained that she observed significant changes in Peterson's demeanor and behavior over the course of his work as a police officer.

On the second day of the hearing, Dr. Aleknavicius testified on behalf of Peterson, and Dr. Young testified on behalf of the City. They offered diverging opinions about Peterson's mental health.

Dr. Aleknavicius described her process of evaluating Peterson and her conclusions. She testified that, in her opinion, "the stressors that [Peterson] . . . experienced and had exposure to in his career [were] more than [she] would say [w]as typical in the first responders that [she had] assessed or treated."

Dr. Aleknavicius agreed that Peterson met the criteria for PTSD when he was initially diagnosed in May 2021. But she testified that when she evaluated Peterson in May 2022 using the DSM-5—the version of the DSM in effect at that time—she determined that Peterson no longer satisfied the criteria for a diagnosis of PTSD. This was because some of Peterson's symptoms had improved due to therapy and treatment, and they no longer met "the threshold during the last month to be endorsed as a current symptom of PTSD." Dr. Aleknavicius testified that an OSTD diagnosis "is a DSM-5 diagnosis that was added as a way to describe other individuals who don't quite meet the full criteria for PTSD." She explained that PTSD can "cause" OSTD, describing Peterson's

8

OSTD as "subthreshold PTSD" caused by "persisting PTSD symptoms." Dr. Aleknavicius elaborated that, in such cases, "the PTSD hasn't quite resolved itself, but it's not meeting the full criteria. So what happens is that as a result, [the person] now ha[s] [OSTD]." Dr. Aleknavicius testified that, despite Peterson's improvement, he remained impaired when she evaluated him because other symptoms persisted, including avoidance of trauma-related reminders and intrusive experiences. According to Dr. Aleknavicius, at the time of her evaluation, Peterson's symptoms were "subthreshold . . . not quite meeting full criteria and full threshold for PTSD." Therefore, her written evaluation diagnosed Peterson with OSTD, "specifically specifying subthreshold PTSD."

However, Dr. Aleknavicius testified that after she prepared her written report, she learned that there was a "text revision" of the DSM-5.[4] According to Dr. Aleknavicius, the most recent version of the DSM was no longer the DSM-5, which she had relied on at the time of Peterson's evaluation and her written report. Instead, at the time of the hearing before the compensation judge in 2023, the most recent version was the DSM-5-TR. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (5th ed. 2022) (DSM-5-TR). Dr. Aleknavicius testified that the DSM-5-TR did not include changes to the diagnostic criteria, but it did include changes to the text. And given changes to the text in the PTSD section of the DSM-5-TR, Dr. Aleknavicius revised

---

[4]     Dr. Aleknavicius testified that the DSM-5-TR was published in March 2022, which was a few months before her evaluation of Peterson.

9

her diagnosis of Peterson to be a present diagnosis of PTSD.[5] She explained that the text revision to the PTSD section states that for a "lifetime diagnosis" of PTSD "there must be a period of time lasting more than one month during which criterion B, C, D, and E have all been met for the same one[-]month period of time."[6] Dr. Aleknavicius testified that, because Peterson previously met all criteria for a diagnosis of PTSD for more than a one-month period, and "[h]e continues to meet some but not all of the criteria for PTSD," he has a present diagnosis of PTSD "based on the lifetime diagnosis" provision in the DSM-5-TR.

In Dr. Aleknavicius's opinion, Peterson should never return to a job in law enforcement in any capacity. She testified that Peterson would be at "significant risk for additional trauma or exposure and worsening of [his] symptoms or reoccurrence of [his] symptoms." However, Dr. Aleknavicius stated, "The only work restriction I issued was not to return to work in law enforcement as a first responder or in any safety sensitive position." She opined that Peterson could return to full-time work in another field. Dr. Aleknavicius recommended that Peterson continue to treat his ongoing symptoms.

---

[5]    The City objected to Dr. Aleknavicius's revised opinion testimony. But the compensation judge permitted it, in part, because the City's expert, Dr. Young, appeared at the hearing and would have an opportunity to rebut Dr. Aleknavicius's testimony.

[6]    Criterion B concerns intrusion symptoms associated with the traumatic event(s) (e.g., recurrent distressing dreams or memories, dissociative flashbacks). Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 301 (5th ed. 2022). Criterion C concerns persistent avoidance of stimuli associated with the traumatic event(s). *Id.* at 302. Criterion D concerns negative changes in thinking and mood associated with the traumatic event(s). *Id.* Criterion E includes trauma-related reactivity, such as irritability, aggression, or risky behavior. *Id.*

The City's expert, Dr. Young, testified that, in his opinion, Peterson "didn't meet criteria for any mental health disorder" at the time of his evaluation. He also disagreed with the two experts who had diagnosed Peterson with PTSD. Dr. Young criticized the methodologies and conclusions of both Dr. Aleknavicius and Dr. Cronin, the psychologist who evaluated Peterson in 2021.

As to his own evaluation of Peterson, Dr. Young observed that Peterson demonstrated no difficulty discussing the traumatic events he had experienced as a police officer. In his view this was atypical for someone with PTSD. He acknowledged that Peterson had some symptoms related to PTSD. But he did not believe that Peterson satisfied the criteria for a PTSD diagnosis.

Dr. Young also disagreed with Dr. Aleknavicius's testimony that, given the new language in the DSM-5-TR concerning "lifetime PTSD," Peterson satisfied the criteria for a present diagnosis of PTSD. He testified that "lifetime PTSD" is not a diagnosis. Rather, the term refers to "looking at . . . lifetime prevalence of PTSD or if someone has ever met criteria for PTSD over the course of their lifetime."

Finally, Dr. Young disagreed with Dr. Aleknavicius's opinions regarding OSTD. He testified that Peterson did not suffer from OSTD. And he disagreed that PTSD causes OSTD. Dr. Young explained that "trauma-related disorders are more on a spectrum, not one thing kind of causing another thing." According to Dr. Young, the DSM-5 requires a "rule-out"—one trauma disorder does not cause another, but instead, a practitioner must diagnose one such disorder or another.

11

Following the hearing, the compensation judge issued his findings and order. The compensation judge found the testimony of Peterson and his wife to be credible. According to the compensation judge, Peterson experienced nine specific traumatic events while working as a police officer. Following these events, Peterson "experienced numbness, disconnection, lack of empathy, isolation, anger, detachment, and depression." The compensation judge found that Peterson had been diagnosed with PTSD by several professionals. As to the opinions of the experts who testified at the hearing, the compensation judge credited the testimony of Dr. Aleknavicius. The compensation judge found that her opinions were more persuasive than Dr. Young's, and the compensation judge explained the basis for this finding.[7] Accordingly, the compensation judge determined that Peterson "continued to meet the diagnosis of PTSD through the second day of [the] hearing as that condition is described in the most recently published edition of the DSM-5-TR." The compensation judge concluded that the City had failed to rebut the statutory presumption of compensability, and thus Peterson was entitled to workers' compensation benefits.

---

[7] According to the compensation judge, Dr. Aleknavicius's opinions were more persuasive than Dr. Young's because (1) Peterson "credibly testified to the gravity of the traumatic events he encountered in his job"; (2) Peterson "credibly testified to his ongoing symptoms"; (3) Peterson's wife "credibly testified" to Peterson's "ongoing symptoms"; (4) Dr. Aleknavicius's opinions are "mostly consistent" with assessments of four other professionals who interacted with Peterson; (5) "Dr. Aleknavicius'[s] opinions comport with [Peterson's] credible testimony and history of treatment"; and (6) Dr. Young acknowledged that Peterson had experienced traumatic events that would satisfy the first diagnostic criterion for PTSD.

Furthermore, the compensation judge found that the City had frivolously denied payment of disability benefits between June 21, 2021, and March 12, 2022—between the time of Peterson's PTSD diagnosis by Dr. Cronin and when the City opposed the diagnosis following Dr. Young's examination of Peterson. The compensation judge imposed a 30 percent statutory penalty for the frivolous denial of payment during this period. *See* Minn. Stat. § 1 76.225, subd. 1(5) (2024).

### *Proceedings Before the WCCA*

The City appealed the compensation judge's decision to the WCCA. Before the WCCA, the City challenged the compensation judge's (1) finding that Peterson had a present PTSD diagnosis and (2) award of a penalty for the City's frivolous denial of primary liability.

Following oral argument, the WCCA filed an order of referral directing the compensation judge to make findings based on the existing record regarding whether Peterson had also experienced a consequential mental injury. The order stated:

> Although the [consequential mental injury] issue was prefaced with 'in the alternative,' we find it necessary for the [referred] issue listed above to be determined by the compensation judge before this court may make a decision on the employer and insurer's appeal. This will promote fair and efficient administration of the appeal for all parties.

Subsequently, the compensation judge filed findings on referral from the WCCA. The compensation judge again found that "[t]he findings and opinions of Dr. Kasey Aleknavicius were more persuasive than those of Dr. Ken Young." Additionally, the compensation judge found that Peterson "sustained a consequential mental health condition in the nature of [OSTD] as a substantial result of the original PTSD diagnosis."

13

The WCCA affirmed the decision of the compensation judge in its entirety. *Peterson v. City of Minneapolis*, No. WC23-6527, 2024 WL 3363123, at \*1 (Minn. WCCA June 28, 2024). It determined that substantial evidence supported the compensation judge's finding that Peterson has a present diagnosis of PTSD. *Id.* at \*15. The WCCA also determined as a matter of law that once an employee has established a compensable PTSD injury, any mental health condition substantially caused by, aggravated by, or accelerated by the PTSD diagnosis is also compensable as a consequential injury, and that it was reasonable for the compensation judge to find that Peterson's OSTD condition was compensable. *Id.* at \*17. Finally, the WCCA determined that the compensation judge did not clearly err in finding that the City had frivolously denied primary liability, and it affirmed the compensation judge's award of a penalty. *Id.* at \*18.

The City appealed the WCCA's decision by writ of certiorari.[8]

## ANALYSIS

### I.

We first consider whether the WCCA erred in affirming the compensation judge's decision that Peterson was entitled to workers' compensation benefits for PTSD. The City argues that the WCCA "committed errors of law when it determined that an individual who no longer meets the criteria for PTSD can still qualify for benefits simply because he once had PTSD." Peterson responds that the City's argument does not concern an error of law,

_____

[8] In addition to the parties' briefs, we received amicus curiae briefs from League of Minnesota Cities, Minnesota Counties Intergovernmental Trust, and Minnesota Association for Justice. The Court appreciates the assistance of these organizations in our consideration of the issues presented here.

14

but is instead a challenge to the factual findings of the compensation judge and the WCCA decision upholding those findings. He points out that an expert testified that he has a present diagnosis of PTSD based on the most recent edition of the DSM, and thus, the record supports the finding that he is entitled to workers' compensation for PTSD.

## A.

To determine the applicable standard of review, we must initially decide whether the City's argument presents a question of law or a question of fact. We begin our analysis of this issue by considering the relevant law and the decisions of the lower courts in this case.

PTSD is the only "mental impairment" recognized by the Workers' Compensation Act. Minn. Stat. § 176.011, subd. 15(d) (2024). Under Minnesota law, when a police officer experiences PTSD and has not been previously diagnosed with this condition, there is a presumption that it is an occupational disease "due to the nature of employment." *Id.*, subd. 15(e). A compensation judge can award compensation for PTSD if the employee proves that "(1) a psychiatrist or psychologist has diagnosed the employee with PTSD, and (2) the professional based the employee's diagnosis on the latest version of the DSM." *Chrz v. Mower County*, 986 N.W.2d 481, 485 (Minn. 2023). When medical experts offer divergent diagnoses, the compensation judge must first decide whether the experts' opinions "have adequate foundation." *Tea v. Ramsey County*, 5 N.W.3d 114, 120 (Minn. 2024) (citation omitted) (internal quotation marks omitted). If there is adequate foundation, the compensation judge must then "decide which of the professional diagnoses is more credible and persuasive." *Id.* (citation omitted) (internal quotation marks omitted).

Here, two licensed psychologists performed independent psychological examinations of Peterson and offered conflicting opinions as to whether he had a present diagnosis of PTSD. Peterson's expert, Dr. Aleknavicius, testified that Peterson had a present diagnosis of PTSD under the most recent version of the DSM. The City's expert, Dr. Young, testified that Peterson did not meet the diagnostic criteria for PTSD or any other mental health disorder.

The compensation judge found that Dr. Aleknavicius's opinions were more credible and persuasive than Dr. Young's opinions and explained this finding. Further, the compensation judge adopted Dr. Aleknavicius's opinion that Peterson "has PTSD as described in the most recently published edition of the DSM." On review, the WCCA affirmed the compensation judge's factual findings. *Peterson*, 2024 WL 3363123, at *14–15. It determined that substantial evidence in the record—Dr. Aleknavicius's testimony—supported the compensation judge's ultimate factual finding that Peterson has a current PTSD diagnosis based on the most recent version of the DSM. *Id.* at *15.

The decisions below were based on the compensation judge's factual findings as to "which of the professional diagnoses [was] more credible and persuasive." *Tea*, 5 N.W.3d at 120 (citation omitted) (internal quotation marks omitted). To decide whether the compensation judge and the WCCA erred in finding that Peterson has a present PTSD diagnosis that entitles him to workers' compensation benefits, our review must focus on the factual findings regarding the experts' testimony. Thus, we apply our standard of review for factual findings. *See id.* at 119–21 (applying the standard of review for factual

16

findings in reviewing the WCCA's affirmance of the compensation judge's finding that the employee has compensable PTSD).

In a workers' compensation case, our standard of review for factual findings depends on "whether a conflict exists between the findings of the workers' compensation court and the findings of the WCCA." *Lagasse v. Horton*, 982 N.W.2d 189, 201 (Minn. 2022). When no conflict exists—as here, where the WCCA affirmed the compensation judge's factual findings—we "view the facts in the light most favorable to the findings and must uphold those findings unless they are 'manifestly contrary to the evidence.' " *Tea*, 5 N.W.3d at 119 (quoting *Schmidt v. Wal-Mart Stores*, 988 N.W.2d 124, 129 (Minn. 2023)). A finding is manifestly contrary to evidence when the evidence "clearly requires reasonable minds to adopt a contrary conclusion." *Lagasse*, 982 N.W.2d at 202.

B.

Applying this standard of review, we now consider whether the WCCA erred in affirming the compensation judge's finding that Peterson has compensable PTSD. As noted, Dr. Aleknavicius explained during her testimony that Peterson no longer met all of the diagnostic criteria for PTSD when she evaluated him because some of his symptoms had improved over time with treatment. But Dr. Aleknavicius testified that a text revision to the DSM in March 2022 clarified that, when Criteria B, C, D, and E are simultaneously met for more than one month, they are considered satisfied for an individual's lifetime. Dr. Aleknavicius testified that Peterson previously met all of the criteria for PTSD for more than one month and that he presently satisfied the other criteria necessary for a PTSD

17

diagnosis. Thus, she concluded, Peterson presently has PTSD as defined by the most recent version of the DSM.

Based on this evidence in the record, we conclude that the finding that Peterson has a present PTSD diagnosis is not manifestly contrary to the evidence. Stated differently, the evidence presented does not clearly require "reasonable minds to adopt a contrary conclusion." *Lagasse*, 982 N.W.2d at 202. Although the City introduced conflicting evidence regarding Peterson's mental health, the compensation judge was not required to accept it. Instead, it had authority to decide which expert's testimony was "more credible and persuasive." *Tea*, 5 N.W.3d at 120 (citation omitted) (internal quotation marks omitted). The compensation judge determined that Dr. Aleknavicius's testimony prevailed. Because the compensation judge's choice was not clearly unreasonable, the WCCA's affirmance of the compensation judge's finding is not manifestly contrary to the evidence.

The City argues that this case is "strikingly similar" to *Chrz*, where we affirmed the WCCA's decision that an employee who was previously—but not currently—diagnosed with PTSD was not entitled to workers' compensation benefits. 986 N.W.2d at 487. In *Chrz*, two psychologists testified before the compensation judge that the employee no longer met the diagnostic criteria for PTSD. *Id.* at 483–84. We agreed with the WCCA that only a present diagnosis of PTSD qualifies as an occupational disease under the Workers' Compensation Act. *Id.* at 486. Here, however, an expert testified that Peterson *did* presently meet the diagnostic criteria for PTSD. And the compensation judge expressly credited that testimony over conflicting expert testimony that Peterson did not meet the

18

criteria for PTSD or any other mental health disorder. Thus, our decision in *Chrz* does not control.

The City also challenges the substance of Dr. Aleknavicius's opinions regarding the revisions in the DSM-TR-5. It argues that the DSM-TR-5 is not a "new edition" of the DSM because it is still the "Fifth Edition."[9] It contends that Dr. Aleknavicius misinterpreted the revised text of the DSM-TR-5, which includes the language regarding "lifetime PTSD." And it argues that the opinions of its expert, Dr. Young, are more consistent with the text of the DSM. But these arguments are challenges to the factual findings of the compensation judge, which we have already determined are not clearly unreasonable. Moreover, the City's arguments suggest that it is appropriate for a compensation judge or the WCCA to make its own diagnosis of an employee by applying the DSM or to perform a "legalistic analysis" of the DSM. In *Tea*, however, we clarified that a compensation judge's factual findings "must be in relation to evidence offered by another medical professional—not based upon the judge's own application of the DSM criteria to the employee's symptoms." 5 N.W.3d at 122.

Finally, the City suggests that the compensation judge erred by failing to acknowledge in its factual findings Dr. Young's "interpretation" of the relevant revisions to the DSM-5-TR. It further contends that the WCCA's finding that Dr. Young "offered no other interpretation of the new text" is manifestly contrary to the evidence. *Peterson*, 2024 WL 3363123, at *13. We disagree. During his testimony, Dr. Young only briefly

---

[9]    Notably, the City's expert, Dr. Young, acknowledged during his testimony that the DSM-5-TR *is* the most recent version of the DSM.

referenced the term "lifetime PTSD" as used in the DSM-5-TR. He testified that he had "heard" the phrase "in a sense that if you're looking at . . . lifetime prevalence of PTSD or if someone has ever met criteria for PTSD over the course of their lifetime, in that kind of discussion context, but not as a diagnosis." Considering the facts in the light most favorable to the findings, the compensation judge's failure to reference this specific portion of Dr. Young's testimony did not result in factual findings that are manifestly contrary to the evidence. Moreover, given Dr. Young's testimony, the WCCA's finding that Dr. Young offered no competing interpretation of the new text is supported by the record.

To be clear, we do not endorse any interpretation of the DSM here. Our decision is based on the application of our standard of review. The standard of review does not allow us to substitute our judgment for the judgment of the compensation judge as to "which of the professional diagnoses [was] more credible and persuasive." *Tea*, 5 N.W.3d at 120 (citation omitted) (internal quotation marks omitted).

Applying our standard of review, we discern no error in the WCCA's decision to affirm the compensation judge's factual finding that Peterson has a current PTSD diagnosis because the WCCA's decision is not manifestly contrary to the evidence. Furthermore, because Peterson has a present diagnosis of PTSD under the most recent version of the DSM, the WCCA did not err in concluding that Peterson is entitled to workers' compensation benefits.

## II.

The City argues that the WCCA erred when it directed the compensation judge to make additional findings regarding Peterson's claim that he was entitled to workers'

compensation benefits for OSTD as a consequential injury of PTSD. Further, the City contends that the WCCA erred by addressing this claim after concluding that Peterson was entitled to workers' compensation benefits for a present diagnosis of PTSD because the issue was moot. Peterson concedes that resolution of this issue may be unnecessary. But he requests a decision from this court because the issue of whether OSTD is a compensable mental impairment "has been percolating in the lower courts" and this court's guidance is needed.

We agree with the City that the WCCA erred when it addressed the issue because the issue was moot. An issue is moot if "a decision on the merits is no longer necessary or an award of effective relief is no longer possible." *Dean v. City of Winona*, 868 N.W.2d 1, 5 (Minn. 2015). The WCCA's determination that Peterson is entitled to compensation benefits for a present diagnosis of PTSD rendered a further decision regarding the merits of Peterson's OSTD consequential injury claim unnecessary.

We reach this conclusion based on the record. Peterson's initial claim petition alleged that he had compensable PTSD. After Dr. Aleknavicius prepared her evaluation, which stated that Peterson's diagnosis was "OSTD (subthreshold PTSD)," Peterson amended his claim petition, adding a second claim for a consequential mental injury of OSTD. But at the hearing before the compensation judge, Dr. Aleknavicius modified the earlier opinion that she had provided in her evaluation. She testified that, based on the most recent edition of the DSM, Peterson has a present diagnosis of PTSD. Dr. Aleknavicius explained that, although she had previously diagnosed OSTD, Peterson's OSTD diagnosis was "subthreshold PTSD." In other words, she diagnosed OSTD because

21

Peterson's PTSD symptoms had decreased when she met with him for the evaluation. The City's expert, Dr. Young, did not disagree with Dr. Aleknavicius's characterization of OSTD as a milder form of PTSD, noting that such disorders fall on a "spectrum."[10] Following the hearing, the compensation judge found Dr. Aleknavicius's testimony to be credible and persuasive. The compensation judge concluded that Peterson has compensable PTSD, and the WCCA affirmed the compensation judge's findings. *Peterson*, 2024 WL 3363123, at *15. Given Dr. Aleknavicius's opinion that Peterson's OSTD diagnosis was "subthreshold PTSD" and the WCCA's decision that Peterson was entitled to compensation benefits for a present diagnosis of PTSD, a decision as to whether Peterson's OSTD diagnosis was a compensable mental impairment was no longer necessary.[11] Thus, the issue was moot.[12]

Because the WCCA erred in addressing the question of whether Peterson was entitled to workers' compensation benefits for OSTD as a consequential mental injury, we

---

[10]     As noted, however, Dr. Young disagreed with Dr. Aleknavicius's opinion that Peterson has a mental health disorder.

[11]     We may avoid the mootness doctrine and exercise our discretion to consider the merits of an issue if the issue is " 'functionally justiciable' and presents an important question of 'statewide significance that should be decided immediately.' " *Dean*, 868 N.W.2d at 6 (quoting *State v. Rud*, 359 N.W.2d 573, 576 (Minn. 1984)); *see also Winkowski v. Winkowski*, 989 N.W.2d 302, 309 (Minn. 2023). An issue is functionally justiciable if the record includes "the raw material . . . traditionally associated with effective judicial decision-making"—namely, "effective presentation of both sides of the issues raised." *Rud*, 359 N.W.2d at 576. We decline to exercise our discretion to consider the merits of the issue here.

[12]     In its challenges to the WCCA's referral order and holding regarding the compensability of OSTD, the City raised multiple additional arguments that we do not reach given our decision to reverse the WCCA's decision on the ground of mootness.

22

reverse the WCCA's decision as to this issue. Additionally, we reverse the WCCA's holding that OSTD is a compensable consequential injury of PTSD.

III.

Finally, the City argues that the WCCA erred in upholding the compensation judge's award of a penalty against the City for frivolously denying primary liability in response to Peterson's claim for workers' compensation benefits. Peterson responds that the compensation judge's decision to award a penalty was an appropriate exercise of discretion.

As noted, when a police officer experiences PTSD and has not been previously diagnosed with this condition, there is a presumption that it is an occupational disease "due to the nature of employment." Minn. Stat. § 176.011, subd. 15(e). The officer's employer or insurer can rebut this presumption, but the employer or insurer "faces a higher burden than in a case in which no presumption applies." *Juntunen v. Carlton County*, 982 N.W.2d 729, 741 (Minn. 2022). The presumption can be rebutted only by "substantial factors." Minn. Stat. § 176.011, subd. 15(e). "If rebutted . . . , the presumption disappear[s]." *Juntunen*, 982 N.W.2d at 741 (alteration in original) (citation omitted) (internal quotation marks omitted). An employer or insurer that rebuts the presumption with substantial factors and denies liability must communicate known substantial factors to the employee at the time of denial of liability. Minn. Stat. § 176.011, subd. 15(e). Denial of a claim must be served on the employee within 14 days after the employer receives notice of or knows of an alleged compensable injury. Minn. Stat. § 176.221, subd. 1 (2024).

23

If an employer or insurer denies an employee's workers' compensation claim without a "good faith investigation of the facts" or if the basis for denial "is clearly contrary to fact or law," it is considered a "frivolous[]" denial. Minn. Stat. § 176.225, subd. 1 (2024). When an employer or insurer frivolously denies an employee's claim, the employee is entitled to a penalty award "of up to 30 percent of th[e] total amount" of the compensation award. *Id.*

Here, the compensation judge concluded that the presumption of compensability under section 176.011, subdivision 15(e), applied to Peterson, and the City failed to rebut the presumption. The compensation judge further concluded that the denial was frivolous because the City did not perform any investigation into Peterson's claim before denying it, and because the City's "primary denial of liability inaccurately stated that the employee had a 'history of personal mental health conditions caused by personal emotional stressors unrelated to employment.' " The compensation judge therefore decided that Peterson was entitled to a penalty award under section 176.225, subdivision 1, in the amount of 30 percent of the total compensation award.

The WCCA affirmed the compensation judge's award of a penalty. *Peterson*, 2024 WL 3363123, at *18. It determined that Peterson established that he was entitled to the presumption that his PTSD diagnosis was work related. *Id.* The WCCA observed that the City denied that the presumption applied, claiming that Peterson had a history of personal mental health conditions unrelated to his employment as a police officer and that these mental health conditions were being further investigated. *Id.* But the WCCA noted that the record contradicts the City's assertions. *Id.* The record shows that Peterson

24

underwent two separate mental health examinations at the outset of his work for the City, and both examinations concluded that Peterson did not have pre-existing mental health issues. *Id.* Based on these findings, the WCCA concluded that the City's denial of primary liability was frivolous and the compensation judge's award of a penalty was a proper exercise of discretion. *Id.*

We will overturn the WCCA's findings "only if, viewing the facts in the light most favorable to the findings, it appears that the findings are manifestly contrary to the evidence or that it is clear reasonable minds would adopt a contrary conclusion." *Juntunen*, 982 N.W.2d at 742 (citation omitted) (internal quotation marks omitted). Here, the WCCA's findings are not manifestly contrary to the evidence. Moreover, those findings support the compensation judge's decision to award a penalty.

The City contends that it is unfair to require employers to rebut the presumption within the statutory period of just 14 days. But as we have previously observed, we are bound to follow the clear mandate of the statute, which serves a competing legislative purpose. *See Juntunen*, 982 N.W.2d at 743 ("The Legislature determined that employees suffering from PTSD need timely access to medical care, and the PTSD presumption puts the onus on employers to quickly resolve such claims."); *Chrz*, 986 N.W.2d at 487 (stating that "we 'must read this state's laws as they are, not as some argue they should be' " (quoting *State v. Carson*, 902 N.W.2d 441, 446 (Minn. 2017))); *see also* Minn. Stat. §§ 176.011, subd. 15(e), 176.221.

The facts in the record support the WCCA's decision to affirm the compensation judge's award of a 30 percent penalty against the City for its frivolous denial of primary

25

liability. Thus, we conclude that the WCCA did not err in affirming the award of the penalty.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Workers' Compensation Court of Appeals in part, and we reverse in part.

Affirmed in part and reversed in part.

MOORE, III, Justice (concurring in part and dissenting in part).

I write separately because I believe that the Workers' Compensation Court of Appeals (WCCA) committed an error of law in affirming the factual finding that Lucas Peterson has a current diagnosis of post-traumatic stress disorder (PTSD) under the most recent version of the Diagnostic and Statistical Manual of Mental Disorders, Textual Revision (5th ed. 2022) (DSM-5-TR), based on a diagnosis of "lifetime" PTSD. The WCCA's acceptance of the compensation judge's finding that Peterson met criteria for a current PTSD diagnosis based on the new "lifetime" PTSD text referenced in the 2022 textual revision of the DSM-5-TR, notwithstanding the fact Peterson no longer met the criteria for a current diagnosis of PTSD, is contrary to our opinion in *Chrz v. Mower County*, 986 N.W.2d 481, 486 (2023). The WCCA's finding that the respondent's expert, Dr. Young, "offered no interpretation of the new text" in the DSM-5-TR is also manifestly contrary to the evidence. While I acknowledge that the court resolves this case without adopting a definitive construction of the DSM-5-TR, I remain concerned that the majority opinion may be construed as implicitly endorsing an expansive interpretation—one under which an employee's eligibility for workers' compensation benefits based on a diagnosis of PTSD could extend beyond the period in which the employee presently meets the diagnostic criteria. Such a construction would allow a PTSD diagnosis to persist indefinitely for benefit purposes, a result this court rejected in *Chrz*. *Id.* at 486. For these

reasons, I respectfully dissent from parts I and III of the court's opinion, and would reverse the opinion of the WCCA on all questions presented.[1]

In 2013, the Legislature amended the Minnesota Workers' Compensation Act to allow injured workers to recover workers' compensation benefits for a diagnosis of PTSD from a licensed psychiatrist or psychologist that arises out of and in the course of employment. *See* Minn. Stat. § 176.011, subds. 15(d), 16 (2024). The Legislature defined PTSD as the "condition as described in the most recently published edition of the Diagnostic and Statistical Manual of Mental Disorders by the American Psychiatric Association." *Id*., subd. 15(d). At the time of our first case interpreting the 2013 workers' compensation PTSD amendments, *Smith v. Carver County*, 931 N.W.2d 390 (Minn. 2019), that version was "commonly known as the DSM-5." *Id.* at 392 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013)). We reasoned in *Smith* that the role of the fact-finder in cases involving workers' compensation PTSD claims is to review competing expert evaluations and determine which was more persuasive based on the application of PTSD from the latest edition of the DSM. *Id*. at 398. And in *Chrz* we relied on *Smith* to reiterate that for an employee to recover workers' compensation benefits for PTSD under the 2013 statutory amendments, the employee

---

[1]     I concur with the opinion of the court as to part II because I agree that, in light of the court's resolution of the issues in part I, the WCCA should not have reached whether Peterson was entitled to workers' compensation benefits for other specified trauma and stressor-related disorder (OSTD) as a consequential injury. But I disagree with the majority's holding regarding Peterson's eligibility for continuing PTSD benefits, and would also reverse the compensation judge's finding that the City's denial of liability was frivolous. I thus dissent from parts I and III of the court's opinion.

"must prove that (1) a psychiatrist or psychologist has diagnosed the employee with PTSD, and (2) the professional based the employee's diagnosis on the latest version of the DSM." *Chrz*, 986 N.W.2d at 485 (citing *Smith*, 931 N.W.2d at 396).

This case involves the application of a new version of the DSM to the PTSD diagnosis—the DSM-5-TR, published in 2022. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* (5th ed. 2022). The compensation judge concluded that, despite Peterson's symptoms not meeting the DSM-5 criteria for PTSD, that he still has PTSD based on meeting the criteria for a "lifetime diagnosis" of PTSD under the DSM-5-TR. The issue before us is whether this conclusion was clearly unreasonable, and therefore whether the WCCA's affirmance of that finding was manifestly contrary to the evidence. I believe that it was.

In May 2022, Dr. Aleknavicius evaluated Peterson and reviewed his medical status from the prior year. That review included Dr. Cronin's June 2021 diagnosis of PTSD. Dr. Aleknavicius concluded that Peterson had met all PTSD diagnostic criteria from around March through June 2021, though treatment had improved some symptoms. But by the time of her May 2022 evaluation, Peterson's symptoms had shifted, and Dr. Aleknavicius found that he no longer met Criteria F and G for a PTSD diagnosis.[2] Dr. Aleknavicius instead diagnosed him with other specified trauma and stressor-related disorder (OSTD), cautioning that Peterson remained at significant risk for future PTSD episodes. In a later

---

[2]     Criterion F applies when the duration of the symptoms in Criteria B, C, D, and E last more than one month. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 307 (5th ed. 2022). Criterion G applies when the symptoms create distress or functional impairment. *Id.*

certification prepared in October 2022, Dr. Aleknavicius confirmed these findings and supported Peterson's workers' compensation claim because he had a different condition, OSTD, rendering him unfit to perform the duties of a police officer.

At the hearing before the compensation judge in April 2023, while testifying, Dr. Aleknavicius opined for the first time that Peterson met all PTSD criteria under the March 2022 DSM-5-TR update. She testified that PTSD remains a valid, continuing diagnosis once the relevant symptom clusters have been simultaneously present for at least one month. She explained that PTSD is a lifetime condition once the four diagnostic criteria are met. In other words, Dr. Aleknavicius testified that Peterson's PTSD diagnosis is perpetual.

In contrast, Dr. Young conducted an independent medical examination in March 2022, and concluded that Peterson had no diagnosable mental health condition and found ongoing treatment unnecessary. During testimony at the hearing, Dr. Young contested the applicability and significance of the DSM-5-TR update referenced by Dr. Aleknavicius. Dr. Young asserted that the DSM-5-TR was merely an administrative revision, not a substantive clinical update, noting that the diagnostic criteria for PTSD were unchanged from the DSM-5. He rejected the concept of "lifetime PTSD" as a recognized diagnosis within the mental health profession, asserting instead that PTSD must be continually reassessed based on a patient's current symptom presentation, and that the "lifetime" language refers to PTSD's prevalence as a disorder.

Despite Dr. Young's opinions objecting to the interpretations of the DSM-5-TR, after weighing all expert testimony, the compensation judge credited Dr. Aleknavicius's

explanations and an earlier evaluation from 2021, finding them consistent with the record and more persuasive than Dr. Young's contrary opinions. Consequently, the compensation judge concluded that Peterson had established a compensable PTSD injury.

The WCCA affirmed the compensation judge's decision in all respects. *Peterson v. City of Minneapolis*, No. WC23-6527, 2024 WL 3363123, at *19 (Minn. WCCA June 28, 2024). It recognized that the compensation judge reasonably credited Dr. Aleknavicius, who relied on the DSM-5-TR, and her explanation of "lifetime" PTSD once the core diagnostic criteria have been met. *Id.* at *14–15. As explained by the WCCA, Dr. Young based his analysis on the earlier DSM-5 and contested the possibility of a lifetime diagnosis without offering a different interpretation of the DSM-5-TR. *Id.* at *15. Because Minnesota law directs the fact-finder to apply the most recent DSM edition and because substantial evidence supported Dr. Aleknavicius's testimony, the WCCA concluded the compensation judge did not err in finding Dr. Aleknavicius's testimony more persuasive than that of Dr. Young. *Id.*

Our review of factual findings in workers' compensation cases is limited. *Tea v. Ramsey Cnty.*, 5 N.W.3d 114, 119 (Minn. 2024). Because the WCCA affirmed the compensation judge's factual findings, we "must uphold those findings unless they are 'manifestly contrary to the evidence.' " *Id.* (quoting *Schmidt v. Wal-Mart Stores, Inc.*, 988 N.W.2d 124, 129 (Minn. 2023)). To be manifestly contrary to the evidence, the evidence must "clearly require[] reasonable minds to adopt a contrary conclusion." *Lagasse v. Horton*, 982 N.W.3d 189, 202 (Minn. 2022).

"When medical professionals provide competing diagnoses, the compensation judge must determine 'whether the expert diagnoses have adequate foundation and, if both have adequate foundation, decide which of the professional diagnoses is more credible and persuasive.' " *Tea*, 5 N.W.3d at 120 (quoting *Juntunen v. Carlton Cnty.*, 982 N.W.2d 729, 743 n.10 (Minn. 2022)). The compensation judge, however, may determine that a PTSD diagnosis is "inconsistent with the DSM" based on "evidence offered by another medical professional." *Id.* at 122. But that determination is "not based upon the judge's own application of the DSM criteria to the employee's symptoms." *Id.* Here, the compensation judge found Dr. Aleknavicius's lifetime PTSD diagnosis more credible and persuasive.

But I have serious doubts that the evidence supports Dr. Aleknavicius's claims about "lifetime PTSD." The disputed portion of the DSM-5-TR states:

> The diagnosis of PTSD requires that the duration of the symptoms in Criteria B, C, D, and E be more than 1 month (Criterion F).
>
> *For a current diagnosis of PTSD*, Criteria B, C, D, and E must all be met for more than 1 month, for at least the past month.
>
> *For a lifetime diagnosis of PTSD*, there must be a period of time lasting more than 1 month during which Criteria B, C, D, and E have all been met for the same 1-month period of time.

Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* 307–08 (5th ed. 2022) (emphasis added). The criteria of the last two sentences seem to operate identically. But it defies logic that the criteria for a present PTSD diagnosis would be identical to the criteria necessary to sustain a "lifetime" diagnosis. Put another way, under Dr. Aleknavicius's reading of this language, any time a person is diagnosed with PTSD, they have PTSD for a lifetime. But the experts here agreed that the DSM-5-TR

did not change the diagnostic criteria for PTSD.[3]  Dr. Young's main objection to Dr. Aleknavicius's testimony was that the diagnostic criteria for PTSD in the DSM-5-TR are no different from the criteria in the DSM-5.  Rather, Dr. Young testified that the "lifetime" language refers to "lifetime prevalence of PTSD or if someone has ever met criteria for PTSD over the course of their lifetime . . . but not as a diagnosis."

In *Chrz*, we confirmed that Minnesota's workers' compensation laws treat PTSD as a condition that can, and does, resolve over time.  986 N.W.2d at 486.  There we held that a deputy sheriff who had been diagnosed with PTSD in 2019 was no longer entitled to benefits once he no longer had a PTSD diagnosis in early 2021.  *Id.* at 487.  We explained that the statute "plainly decide[s] that an employee is only eligible for workers' compensation benefits so long as they meet the precise definition of PTSD," warning that extending benefits after the diagnosis resolves "would allow an employee's diagnosis of PTSD to remain effectively perpetual."  *Id.* at 486.  *Chrz* therefore suggests that under the DSM-5—and thus under the DSM-5-TR, because the diagnostic criteria for PTSD are identical—PTSD cannot be considered a permanent (or lifetime) diagnosis.  This is because once the clinical criteria are no longer met, the law regards the worker as having recovered,

---

[3]    The only modification to the PTSD diagnostic criteria in the DSM-5-TR applies exclusively to children.  *See* Am. Psychiatric Ass'n, *Rationale for Change: Posttraumatic Stress Disorder* (2022), https://www.psychiatry.org/getmedia/eacace92-3964-4350-a0bd-e42fc03e806a/APA-DSM5TR-PTSD.pdf [opinion attachment].  And no changes were made to the PTSD diagnostic criteria for adults in the DSM-5-TR.  *See* U.S. Dep't of Veterans Aff., *PTSD: National Center for PTSD,* https://www.ptsd.va.gov/professional/treat/essentials/dsm5_ptsd.asp (last visited June 30, 2025) [opinion attachment] ("With no changes to the diagnostic criteria in *DSM-5-TR* . . . .").

terminating the "occupational disease" and any consequent benefits payable because of that occupational disease. *Id.*

Because the WCCA affirmed the factual finding of Peterson's present diagnosis of PTSD despite his symptoms not meeting the requirements of the DSM-5, the WCCA necessarily concluded that new language in the DSM-5-TR permits a psychiatrist to make an active diagnosis of PTSD in circumstances under which the DSM-5 did not. I believe that conclusion was a legal error, and I therefore would reverse the decision of the WCCA on that basis.

Accordingly, I respectfully dissent as to parts I and III of the court's opinion.

THISSEN, Justice (concurring in part and dissenting in part).

I join the opinion of Justice Moore concurring in part and dissenting in part.



The Diagnostic and Statistical Manual of Mental Disorders, fifth edition, text revision (DSM-5-TR), like DSM-5, features a lifespan approach to mental health. Some of the diagnostic criteria were updated in DSM-5-TR to capture the experiences and symptoms of children more precisely, one of these involving changes to criterion A.2 for posttraumatic stress disorder in children. **The change was approved by the DSM Steering Committee and APA Assembly and Board of Trustees.**

## Rationale for Change

The note stating: "witnessing does not include events that are witnessed only in electronic media, television, movies, or pictures" in criterion A.2 was removed for children 6 years and younger. The reason was that the note is redundant given that criterion A.2 already indicates that the events occurring to others must be witnessed in person.

DSM is the manual used by clinicians and researchers to diagnose and classify mental disorders. The American Psychiatric Association (APA) will publish DSM-5-TR in 2022.

APA is a national medical specialty society whose more than 37,400 physician members specialize in the diagnosis, treatment, prevention, and research of mental illnesses, including substance use disorders. Visit the APA at www.psychiatry.org. For more information, please contact APA Communications at 202-459-9732 or press@psych.org.

© 2022 American Psychiatric Association



Order DSM-5-TR and related titles
at www.appi.org

# PTSD: National Center for PTSD

## PTSD and *DSM-5*

In 2013, the American Psychiatric Association revised the PTSD diagnostic criteria in the 5th edition of its *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-5*; 1). PTSD was included in a new category in *DSM-5*, Trauma- and Stressor-Related Disorders. All conditions included in this classification require exposure to a traumatic or stressful event as a diagnostic criterion. *DSM-5-TR* was published in March 2022 to include scientific advances since the release of *DSM-5*. No changes were made to the PTSD diagnostic criteria for adults in this update (2).

For a review of the *DSM-5* changes to the criteria for PTSD, including resources for *DSM-5-TR* updates, see the American Psychiatric Association website on educational resources for *DSM-5* and *DSM-5-TR*.

In This Article

▾ *DSM-5* Criteria for PTSD

▾ How Do the *DSM-5* PTSD Symptoms Compare to *DSM-IV* Symptoms?

▾ What Are the Implications of the *DSM-5* and *DSM-5-TR* Revisions on PTSD Prevalence and Diagnostic Issues?

▾ References

## *DSM-5* Criteria for PTSD

Full copyrighted criteria are available from the American Psychiatric Association (2). All of the criteria are required for the diagnosis of PTSD. The following text summarizes the diagnostic criteria:

**Criterion A (1 required):** The person was exposed to: death, threatened death, actual or threatened serious injury, or actual or threatened sexual violence, in the following way(s):

- Direct exposure
- Witnessing the trauma
- Learning that the trauma happened to a close relative or close friend
- Indirect exposure to aversive details of the trauma, usually in the course of professional duties (e.g., first responders, medics)

**Criterion B (1 required):** The traumatic event is persistently re-experienced, in the following way(s):

- Unwanted upsetting memories
- Nightmares
- Flashbacks
- Emotional distress after exposure to traumatic reminders
- Physical reactivity after exposure to traumatic reminders

**Criterion C (1 required):** Avoidance of trauma-related stimuli after the trauma, in the following way(s):

- Trauma-related thoughts or feelings
- Trauma-related reminders

**Criterion D (2 required):** Negative thoughts or feelings that began or worsened after the trauma, in the following way(s):

- Inability to recall key features of the trauma
- Overly negative thoughts and assumptions about oneself or the world
- Exaggerated blame of self or others for causing the trauma
- Negative affect
- Decreased interest in activities
- Feeling isolated
- Difficulty experiencing positive affect

**Criterion E (2 required):** Trauma-related arousal and reactivity that began or worsened after the trauma, in the following way(s):

- Irritability or aggression
- Risky or destructive behavior
- Hypervigilance
- Heightened startle reaction
- Difficulty concentrating
- Difficulty sleeping

**Criterion F (required):** Symptoms last for more than 1 month.

**Criterion G (required):** Symptoms create distress or functional impairment (e.g., social, occupational).

**Criterion H (required):** Symptoms are not due to medication, substance use or other illness.

**Two specifications**:

1. **Dissociative Specification.** In addition to meeting criteria for diagnosis, an individual experiences high levels of either of the following in reaction to trauma-related stimuli:
   - Depersonalization. Experience of being an outside observer of or detached from oneself (e.g., feeling as if "this is not happening to me" or one were in a dream).
   - Derealization. Experience of unreality, distance, or distortion (e.g., "things are not real").

2. **Delayed Specification.** Full diagnostic criteria are not met until at least 6 months after the trauma(s), although onset of symptoms may occur immediately.

Note: *DSM-5* introduced a preschool subtype of PTSD for children ages six years and younger.

Back to Top

## How Do the *DSM-5* PTSD Symptoms Compare to *DSM-IV* Symptoms?

Overall, the symptoms of PTSD are generally comparable between *DSM-5* and *DSM-IV*. With no changes to the diagnostic criteria in *DSM-5-TR*, the comparison below remains unchanged. A few key alterations include:

- The revision of Criterion A1 in *DSM-5* narrowed qualifying traumatic events such that the unexpected death of family or a close friend due to natural causes is no longer included.
- Criterion A2, requiring that the response to a traumatic event involved intense fear, hopelessness, or horror, was removed from *DSM-5*. Research suggests that Criterion A2 did not improve diagnostic accuracy (2).
- The avoidance and numbing cluster (Criterion C) in *DSM-IV* was separated into 2 criteria in *DSM-5*: Criterion C (avoidance) and Criterion D (negative alterations in cognitions and mood). This results in a requirement that a PTSD diagnosis includes at least one avoidance symptom.
- Three new symptoms were added:
  - Criterion D (Negative thoughts or feelings that began or worsened after the trauma): Overly negative thoughts and assumptions about oneself or the world; and, negative affect
  - Criterion E (Trauma-related arousal and reactivity that began or worsened after the trauma): Reckless or destructive behavior

---

**CONTINUING EDUCATION**
### PTSD Overview and Treatment

The course describes the *DSM-5* diagnostic criteria for PTSD and evidence-based treatments. Videos of Veterans with PTSD and clinicians are included.



---

Back to Top

## What Are the Implications of the *DSM-5* and *DSM-5-TR* Revisions on PTSD Prevalence and Diagnostic Issues?

Changes in the diagnostic criteria have minimal impact on prevalence. National estimates of PTSD prevalence suggest that *DSM-5* rates were only slightly lower (typically about 1%) than DSM-IV for both lifetime and past-12 month (4). When cases met criteria for *DSM-IV*, but not *DSM-5*, this was primarily due the revision excluding sudden unexpected death of a loved one from Criterion A in the *DSM-5*. The other reason was a failure to have one avoidance symptom. When cases met criteria for *DSM-5*, but not *DSM-IV*, this was primarily due to not meeting *DSM-IV* avoidance/numbing and/or arousal criteria (4). Research also suggests that similarly to *DSM-IV*, prevalence of PTSD for *DSM-5* was higher among women than men and increased with multiple traumatic event exposure (4).

The *DSM-5-TR* updates include summarizations of cultural factors, such as type of traumatic exposure or sociocultural context, that may influence the development and clinical expression of PTSD (2).

Back to Top

## References

1. American Psychiatric Association. (2013). *Diagnostic and statistical manual of mental disorders* (5th ed.). https://doi.org/10.1176/appi.books.9780890425596

2. American Psychiatric Association. (2022). *Diagnostic and statistical manual of mental disorders* (5th ed, text rev.) https://doi.org/10.1176/appi.books.9780890425787

3. Friedman, M. J., Resick, P. A., Bryant, R. A., & Brewin, C. R. (2011). Considering PTSD for *DSM-5*. *Depression & Anxiety, 28*(9), 750-769. https://doi.org/10.1002/da.20767

4. Kilpatrick, D. G., Resnick, H. S., Milanak, M. E., Miller, M. W., Keyes, K. M., & Friedman, M. J. (2013). National estimates of exposure to traumatic events and PTSD prevalence using *DSM-IV* and *DSM-5* criteria. *Journal of Traumatic Stress, 26*(5), 537-547. https://doi.org/10.1002/jts.21848

Back to Top

Go To Patient Version

**YOU MAY ALSO BE INTERESTED IN**







### PTSD 101: PTSD Overview

This PTSD 101 online course describes the *DSM-5* diagnostic criteria, risk factors, and evidence-based treatments for PTSD.

### Patient Education

Tools to help your patients understand PTSD.

### PTSD Consultation Program

Expert guidance for treating Veterans with PTSD.



PTSD Information Voice Mail: (802) 296-6300
Email: **ncptsd@va.gov**
Also see: **VA Mental Health**



Site Map